LUIS F. COLL WATLINGTON, Plaintiff, Respondent and Petitioner, *v.* RAFAEL PICÓ, SECRETARY OF THE TREASURY, Defendant, Petitioner and Respondent.

No. 12489. Submitted March 21, 1960.—Decided December 7, 1960.

*Francisco Espinosa, Jr., Acting Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice* and *Luis F. Candal, Assistant Attorney General,* for petitioner-respondent. *F. M. Susoni,* for respondent-petitioner.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

There is but one issue in this suit: are the furniture, equipment and instruments used by a dentist in his office exempt from taxation? In order to decide this question it is necessary to interpret the scope of § 291(i) of the Political Code, 13 L.P.R.A. § 551(i). It is provided therein (in the Spanish text) that: "Estarán exentas de tributación para la imposición de contribuciones las propiedades siguientes: ... (i) *Los instrumentos profesionales y las herramientas o aparatos de mecánicos y artesanos, y que para servirse de ellos hayan de ser movidos o usados exclusivamente a mano.*" (Italics ours.) As we shall see later, we must bear in mind the English version of this law. It reads thus: "The following property shall be exempt from assessment for taxation purposes: ... (i) *The professional tools or working tools of mechanics, or artisans, moved or worked exclusively by hand.*" (Italics ours.) It should be noted that this provision of our

Political Code was promulgated in 1902 and that it has never been changed or modified in any manner whatsoever. Revised Statutes and Codes of Puerto Rico, 1902, at 400, § 291 (i).

There is no dispute as to the facts involved in the case. The plaintiff, Luis F. Coll Watlington, is a dentist who practices his profession in Santurce. All the furniture, equipment and tools which he possessed in his office were assessed at $5,220 for the tax year 1955–56. Based on this assessment the Secretary of the Treasury imposed a tax on him for personal property which mounted to $251. Feeling aggrieved, Coll Watlington appealed to the Superior Court in the manner and within the term provided by law. 13 L.P.R.A. § 282. He alleged in his complaint that the said personal property: "is exempt from taxation because it constitutes the working tools of the complainant herein," and he moved that "both the assessment made by respondent on the above-mentioned property as well as the tax levied thereon be rendered void." The Secretary of the Treasury in his answer admitted the essential facts, but he adduced as a defense that "the assessed property on which this suit is based does not enjoy any tax exemption whatsoever."

The question of law thus raised in the pleadings was submitted to the lower court by means of a stipulation subscribed by counsel for both parties on January 29, 1958. Literally it reads thus:

"The parties to this lawsuit appear represented by their respective lawyers and they respectfully submit to the consideration and approval of this Court the following stipulation made pursuant to the order issued by the said Court at the hearing of this case on December 11 of last year:

1.—That by mutual consent they have agreed on the following enumeration and appraisal of plaintiff's furniture and working equipment for the year in which this action took place:

(a) 5 Dental units with lamps (including the motors), $350 each........................ $1,750.00

(b) 6 Electric motors (of the former units appraised separately for $50 each)................. 300.00

| | | |
|---|---|---|
| (c) | 1 X-Ray Machine with its chair............. | $500.00 |
| (d) | 1 X-Ray Machine with its chair............ | 70.00 |
| (e) | 1 Sterilizer............................... | 125.00 |
| (f) | Working tools............................. | 350.00 |
| (g) | 3 Cabinets ............................... | 140.00 |
| (h) | 1 Refrigerator............................ | 60.00 |
| (i) | Dental laboratory instruments.............. | 750.00 |
| (j) | 1 Table with two (2) chairs................ | 25.00 |
| (k) | 2 Washing-stands.......................... | 30.00 |
| (l) | 1 Desk and its chair...................... | 35.00 |
| (m) | 1 Suction Vaccum Machine.................. | 30.00 |
| (n) | 2 Safety deposit boxes..................... | 100.00 |
| (o) | 1 Furniture set for the waiting room........ | 75.00 |
| (p) | 1 Typewriter.............................. | 40.00 |
| (q) | 1 Steel filing cabinet...................... | 20.00 |
| (r) | Fluorescent lamps......................... | 30.00 |
| (s) | 6 Garbage cans........................... | 35.00 |
| (t) | Surgical instruments....................... | 500.00 |
| (u) | 2 Electric fans............................ | 25.00 |
| (v) | 1 Utility table............................ | 10.00 |
| (x) | Lamp set................................. | 255.00 |

2.—That it is plaintiff's contention that according to law the only property subject to tax is the personal property of a professional consisting of machinery moved mechanically and therefore, in his opinion, only item (b) is taxable.

3.—That it is defendant's contention that any working equipment of a professional moved to any extent by electricity or any other motor force not by hand, is subject to tax.

The parties respectfully pray this Court to grant its approval to the present stipulation and to decide accordingly that the enumeration and appraisal of plaintiff's personal property for the year in question and for all legal purposes is the one described in paragraph 1 of the same, and that it be decided likewise with all other pertinent legal pronouncements whether for taxation purposes according to the law only the electrical motors which are attached into a working unit of a professional are subject to pay taxes or whether on the contrary, the whole unit is taxable."

The trial court assumed that there were two kinds of personal property exempt from taxation according to para-

graph (i) of § 291: (1) the professional tools and (2) the working tools of mechanics and artisans. Based on this premise it decided that the phrase "moved or worked exclusively by hand" modifies and limits everything previously mentioned in said paragraph, for which reason it is a condition to be fulfilled by both kinds of personal property in order to be exempt from taxation. Here is the explanation for the first conclusion contained in the judgment appealed from: that all the tools in plaintiff's dental office which are moved by electricity are subject to property tax. However, the lower court interpreted in a broad and liberal way the term "professional tools" moved or worked exclusively by hand. Hence, its second conclusion: that "within the phrase 'professional tools or working tools' are included certain basic pieces of furniture which are essential in the office of a professional, wherefore we decided that items 'f,' 'g,' 'i,' 'j,' 'k,' 'l,' 'o,' 'p,' 'q,' 's,' 't,' and 'v' [described in the stipulation] are exempt from property taxes." Both parties have appealed from the judgment rendered pursuant to these pronouncements.

The parties hold conflicting positions in their appeal. The plaintiff alleges that *all* the personal property which he has in his dental office is exempt from taxation, basing his argument on the fact that "worked by hand" and "moved by hand" have different meanings. That is why he argues that the dental units, the X-Ray machines, the sterilizer and all the other items excluded by the trial judge are "worked by hand" even though they are moved by the energy of electric current. On the other hand, the Secretary of the Treasury contends that, excepting the working tools and surgical instruments, none of the items of personal property declared by the trial judge to be exempt from taxation constitutes "professional tools." He also maintains that the surgical instruments and the working tools in this case should have been declared taxable because of lack of evidence as to whether

as a matter of fact they were moved or worked exclusively by hand. For reasons different from the ones adduced by the Secretary of the Treasury, we believe that a correct interpretation of § 291(i) of the Political Code does not permit any of the personal property involved in this suit to be declared exempt from taxation.

 Let us start by obtaining the literal meaning derived from the words used in establishing the legal exemption. According to the Spanish text and setting aside for the moment other elements which may clarify the meaning and scope of the statute, there are two possibilities from the grammatical viewpoint: (1) that both, "the tools" (*instrumentos*) of professionals (doctors, dentists, engineers, etc.) as well as the "working tools" (*herramientas o aparatos*) of mechanics and artisans are exempt from taxation; and (2) that the "professional tools," or "working tools" which are exempt are only those belonging to mechanics or artisans. However, in the English version of the statute—which is the original and which must prevail in deciding issues of construction—[1] the literal meaning of the terms according to their natural connection excludes the first construction given above. In the English version of the text, we observe in fact, that "professional tools or working tools" are concepts which are closely related and which serve to name the group of instruments, tools or implements used by the so-called "mechanics or artisans" in the exercise of their arts and trades. The same term "tools" is used with two different adjectives, whereas the Spanish version first

[1] As § 291(i) of the Political Code of 1902 was enacted in English and it has not been amended thereafter, the discrepancy existing between the Spanish and the English version must be decided giving the preference to the latter, according to the rule of legal construction prescribed by § 13 of the Civil Code (31 L.P.R.A. § 13). See *Sucn. Pedro Giusti, Inc.* v. *Tax Court*, 70 P.R.R. 109 (1949) and *New Córsica Centrale* v. *Gallardo*, 41 P.R.R. 665 (1931). *Cf.*, besides, *Treasurer of Puerto Rico* v. *Tax Court; Cerra, Int.*, 74 P.R.R. 531, 545 (1953); *Pérez* v. *District Court*, 69 P.R.R. 4 (1948); *Mestres* v. *Díaz Román*, 50 P.R.R. 354 (1936); *People* v. *Tirado*, 68 P.R.R. 270 (1948) and *People* v. *Buscaglia*, 58 P.R.R. 920, 922 (1941).

mentions *"instrumentos"* and later *"herramientas o apara-tos."* Besides, the syntax of the whole sentence in the English version establishes an inseparable nexus between both kinds of tools and the common characteristic immediately following: belonging to "mechanics or artisans." Therefore, contrary to the assumption made by the trial judge, both the "professional tools" and the "working tools" must belong to *mechanics* or *artisans* in order to enjoy the exemption established by law. The tools used by dentists, doctors, engineers, and other professionals, whether they be moved and worked by hand or whether they be moved by electricity, are in no case exempt from taxation.

If we examine the purposes sought by this exemption, we will see that that conclusion suits perfectly the rational basis or essential purpose of the law. In the first place, it is sought to protect and to promote certain trades in which the laborer performs manual work by means of instruments, tools or implements "moved or worked by hand." Logically, the operations related to intellectual activities are not included in the exemption, even though they may require the use of tools which a professional moves by his own hands. In the second place, the bases for levying the personal property tax were established upon a fundamental equitable principle for the distribution and incidence of the tax: public policy demands that all persons and property equally share the burden of the tax. The exemption provided by § 291 (i) is in fact an exception to this principle. It is justified by the limited tax capacity of the laborers who practice manual trades. And it would be illogical to include the tools used by professionals within the ambit of that exemption.

It should be noted that many States of the Union have exemptions similar to the one established by our § 291 (i). Jacobs, *Exemption of Tangible Personalty* in *Tax Exemptions, a Symposium Conducted by the Tax Policy League* (1939) 159. Generally, they use a statutory formula similar

to the one in force in Puerto Rico. For example: "working tools of *mechanics* or artisans moved or worked exclusively by hand" (Maryland); "the tools of any *mechanic* [artisan] necessary for carrying on his trade" (Mississippi); "tools and implements of a *mechanic* [artisan] or farmer" (Vermont); and "the tools of a *mechanic* [artisan] kept and used in his trade" (Wisconsin). See *State and Local Tax Service —Property Tax Edition* P-H, vols. 3 (par. 32,094); 4 (par. 33,302) and 7 (pars. 33,076 and 32,048). The courts of those states have repeatedly held that that type of exemption does not include the tools used by professionals, such as dentists, doctors, optometrists, engineers, etc. See *Whitcomb v. Reid,* 33 Miss. 567, 569, 66 Am. Dec. 579; *Frantz* v. *Dobson,* 2 So. 75 (Miss. 1887); *Smith and Funck* v. *Osburn,* 5 N.W. 681 (Iowa 1880) and *Town of Albion* v. *Trask,* 41 N.W. 2d 627 (Wisc. 1950); 2 Cooley, *The Law of Taxation* (4th ed. 1924) § 674; Note in 100 A.L.R. 1033 (1936); 35 C.J.S.—*Exemptions,* p. 40; and 51 Am. Jur.—*Taxation,* § 547, p. 548.

█ █ We have no basis for considering here the issue raised for the first time in the oral arguments of the parties: whether there exists an administrative practice which, though not judicially binding, may have a persuasive effect on the construction of § 291 (i). In the first place, no rule for the enforcement of a law has ever been established. And, in the absence of such a rule, the existence of any general and long-standing practice which has been observed with the conviction that it is judicially binding constitutes strictly a matter of fact. The record does not show whether before the appearance of this case an administrative practice concerning § 291 (i) had taken roots or had acquired authority. In the second place, we can not forget that the persuasive force of administrative practices is always relative: it depends upon a delicate and complex appreciation of all the elements that intervene in the process of a reasonable.

construction of the law. See Lenhoff, *Comments, Cases and Materials on Legislation* (1949) 723-786. Therefore, when a statute is clear by using the rational means of construction "no taxpayer can take refuge in an administrative interpretation or regulation to the contrary" and the legal warning is applicable here that "a failure to enforce the law does not change it." *Cf. Louisville and Nashville R. R. Co. v. United States*, 282 U.S. 740, 741, 759 (1930); *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 284-291 (1946) and *Puerto Rico Ilustrado v. Buscaglia, Treas.*, 64 P.R.R. 870; 890-893 (1945).

In the stipulation submitted to the Superior Court by the parties, according to the record, the essential facts of the case were deemed proved. But the parties also stipulated concerning the basic question of law raised in this suit: the construction which should be given to § 291(i) of the Political Code. It was admitted in the stipulation that the working tools of a professional, moved or worked exclusively by hand, are exempt from taxation. In effect, after stating the facts, the following was set forth in paragraphs 2 and 3 of the stipulation: "2.—That it is plantiff's contention that according to law the only property subject to tax is the personal property of a professional consisting of machinery moved mechanically and therefore, in his opinion, only item (b) [6 electric motors] is taxable," and "3.—That it is defendant's contention that any working equipment of a professional moved to any extent by electricity or any other motor force not by hand, is subject to tax." Immediately following, the lower court was asked to approve the said stipulation. Thus, both parties accepted that the exemption applied to the working tools of a dentist, provided that these are moved or worked exclusively by hand. And the Secretary of the Treasury on appeal to this Court repeats that "the statute declares as exempt from taxation the tools of a professional used exclusively by hand." As we have shown before, this construction of § 291(i) is erroneous.

However, no stipulation or admission made by the parties may deprive the court of its power to interpret the law. Regarding the facts and the evidence, the principle is that ordinarily these are binding on both the parties and the court. *Cf. International General Electric Co. of P. R.* v. *Buscaglia, Treas.* 66 P.R.R. 249, 254-55 (1946); *Roca* v. *Thomson,* 77 P.R.R. 396, 407-08 (1954) and *Fernández* v. *Davidson,* 80 P.R.R. 245, 249 (1958). Nevertheless, regarding the rules of law and their construction, the judge is in a different position. As the court is by definition a jurisdictional organ, having cognizance of the law and its technique, it has the unavoidable obligation to seek and interpret the rule of law applicable to the concrete situation raised before it. Besides, there are obvious reasons of public policy which prevent the courts from rendering judgments based upon erroneous rules of law, even though they arise from a stipulation agreed upon by the parties. It follows then as a procedural consequence that the parties can not bind the court by allegations, admissions or stipulations concerning the existence or construction of specific rules of law. That is, that the function of finding the law belongs exclusively to the judge and by virtue of this power the court is at liberty to apply the rule it deems pertinent and adequate, even though it must depart from the allegations, admissions or stipulations of the parties. This is the universally established rule in the United States. See *Estate of Sanford* v. *Commissioner,* 308 U.S. 39, 50-51 (1939); *Swift & Co.* v. *Hocking,* 243 U.S. 281, 289 (1917); *Burdette* v. *Rollefson Construction Co.,* 344 P.2d 307, 309-10 (Cal. 1959); *Davis* v. *Commissioner,* 241 F.2d 701, 703 (7th Cir. 1957); *Daugaard* v. *Hawkeye Security Insurance Co.,* 239 F.2d 351, 354 (8th Cir. 1956); *In re Milbourne,* 77 F.2d 310, 312 (2d Cir. 1935); *Bear River Paper & Bag Co.* v. *City of Petaskey,* 241 Fed. 53, 56 (6th Cir. 1917); Annotation in 92 A.L.R. 663 (1934); 83 C.J.S. *Stipulations,* § 10(c). A more or less similar principle governs in almost

all the modern procedural systems. For example, in Spain, it is the established procedure that in all civil actions the burden is on the parties to introduce all matters of fact and of evidence, but as a general rule it is the judge's function to qualify the facts according to the law and to apply the pertinent rule of law, "without being bound by the parties in this intellectual task." *Cf.* Polaino Ortega, *La Determinación de la Norma en el Proceso Civil,* in *Revista de Derecho Procesal* (1960) 19–31; Prieto Castro, *Manual de Derecho Procesal Civil,* vol. I (1959) 247–254, 346–348, and De la Plaza, *Derecho Procesal Civil Español,* vol. 1 (3d ed. 1951) 309–322.[2] Therefore, in our opinion, the stipulation made by the parties regarding the scope and meaning of § 291 (i) is entirely devoid of any legal validity.

██ Since the commencement of this action, the main contention of the Secretary of the Treasury has always been the same: that none of the assessed properties is exempt from taxation. It is true that he adduced an erroneous justification to support his position. But there is nothing to prevent us from ascertaining on appeal or review, at the party's request or on our own motion, that there is in fact another valid and adequate legal ground to uphold the fundamental contention raised by the Secretary of the Treasury from the commencement of this action. Besides, although the issue which has been raised for the first time on review may be classified as a "novel question," the truth is that it involves but a question of law whose solution would be sufficient for this Court to render a final judgment. Consequently, we can not refuse to consider and decide it without

---

[2] Note that, aside from the stipulations or admissions formulated by the parties, in almost all the civil actions there might exist two possibilities: the plaintiff may voluntarily withdraw the appeal, defendant may acquiesce in the request or both parties may conclude a transaction. It is beyond the question now under our consideration to examine the requisites and limitations imposed by the juridical policy in Puerto Rico to these procedural steps when their effect is to terminate the case *with judgment* (a) as to the entire object of the suit, or (b) as to a part thereof.

failing in our essential duty of administering justice and finding the truth in each suit. The archaic rule that the theory of the case used in the trial court can never be changed on appeal or review has been dismissed by our case law. Besides, it is strictly a question of law dealing with the scope and meaning of § 291 (i), for which reason it would be of no avail to argue that the same was not raised or decided by the trial court. See *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108, 120-23 (1957) and *Rossy* v. *Super. Ct.; Heirs of Lloréns, Ints.*, 80 P.R.R. 705, 724-25 (1958). *Cf.*, besides, *Burdette* v. *Rollefson Construction Co.*, 344 P.2d 307, 309-10 (Cal. 1959) and *Raising New Issues on Appeal*, 64 Harv. L. Rev. 652 (1951).

Therefore, it is necessary to apply to the facts of this case the correct and adequate interpretation of § 291 (i), which we have set forth above. Consequently, the judgment appealed from is reversed and the complaint dismissed.

Mr. Justice Belaval and Mr. Justice Hernández Matos dissented.

Mr. Justice Santana Becerra did not participate herein.

———

MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ, concurring.

I agree with the grounds on which the majority opinion is based and the conclusion reached. I believe, however, that a comparative analysis of the relevant provisions contained in §§ 291 (i) and 307 of the Political Code, as they were originally adopted and still exist today, helps to determine that the scope of the exemption granted by § 291 (i), within the legislative purpose, was to benefit and protect only the type of persons—mechanics and artisans—mentioned in both of the sections cited, which, as part of the same legal body, were adopted by the Legislature at the same time.