200 So. 425

ÆTNA CASUALTY & SURETY CO. v. CHAPMAN et al.

6 Div. 768.

Supreme Court of Alabama.

Jan. 16, 1941.

Rehearing Denied Feb. 27, 1941.

600

Gordon Davis, W. C. Warren, and E. L. Dodson, all of Tuscaloosa, for appellees.

Foster, Rice, Madison & Rosenfeld, of Tuscaloosa, for appellant.

BOULDIN, Justice.

A retail grocer owned and operated a ½ ton pick-up Chevrolet truck in connection with his grocery business.

He took out an "Automobile Basic Liability Policy" on this truck, particularly described, covering "bodily injury liability."

During the policy period, he turned in the truck to a repair company for repairs. This company furnished him its own truck, a Ford V-8, ½ ton pick-up truck, for use while his truck was undergoing repairs. It was contemplated the ensuing day would be consumed in making repairs. While operating this Ford truck in connection with such grocery business, and on the same day it was delivered to insured, it came in contact with and inflicted bodily injury upon a little girl, from which she died.

The father of the child sued the insured and his employee, driver of the truck, for damages because of the alleged wrongful act or negligence of the employee resulting in the death of the child.

A controversy arose between the insurer and the insured touching the coverage of the policy in the premises, and the consequent obligation of the insurer to defend the suit.

Therefore, the insurer appellant filed this suit for a declaratory judgment settling such controversy.

The trial court adjudged that the policy does cover the liability, if any, for injury caused by the operation of the Ford truck in the business of the insured, Mr. Chapman, and the insurer is obligated to defend the damage suit.

The appeal is to review this judgment or decree. The solution of the case turns on the construction of the policy. The facts are not in material conflict.

Some difference of view appears as to whether the transaction between the insured and the garage people should be held to be a loan of the Ford truck or a hire of said truck. Some evidence was to the effect that it was delivered upon a request for a loan, while other evidence is to the effect that the consideration for turning over the Chevrolet truck to this garage for repairs was, in part, the use of the Ford truck while the Chevrolet truck was detained for repairs.

It does not appear that anything was said at the time touching an extra charge for the use of the Ford truck, nor that an extra charge was made therefor.

Whether held to be a loan or a hiring of the Ford truck we deem wholly immaterial.

Without question it was delivered for temporary use, while the Chevrolet truck was out of use in the grocery business, undergoing repairs.

The legal obligations between bailor and bailee for hire as distinguished from a gratuitous bailment, or the status of bailee as to third persons in other forms of action, have no bearing on the inquiry here.

Looking to the four corners of the policy, we set out its pertinent provisions:

602

The Declarations first set out include:

"1. Name of Insured, L. D. Chapman;"

"The Occupation of the named Insured is Retail Grocer."

The coverage and specific description of the Chevrolet truck are in usual form.

"5. The purposes for which the automobile is to be used are Commercial * * * (b) The term 'commercial' is defined as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named Insured's business occupation as expressed in Declaration 1."

"6. The named Insured is the sole owner of the automobile."

These provisions are pertinent when taken in connection with the controlling provision, number "V" of "Insuring Agreements," which reads:

"V *Automatic Insurance for Newly Acquired Automobiles* If the named Insured who is the owner of the automobile acquires ownership of another automobile, such insurance as is afforded by this policy applies also to such other automobile as of the date of its delivery to him, subject to the following additional conditions: (1) if the Company insures all automobiles owned by the named Insured at the date of such delivery, insurance applies to such other automobile, if it is used for pleasure purposes or in the business of the named Insured as expressed in the declarations, but only to the extent applicable to all such previously owned automobiles; (2) if the Company does not insure all automobiles owned by the named Insured at the date of such delivery, insurance applies to such other automobile, if it replaces an automobile described in this policy and may be classified for the purpose of use stated in this policy, but only to the extent applicable to the replaced automobile; (3) the insurance afforded by this policy automatically terminates upon the replaced automobile at the date of such delivery; and (4) this agreement does not apply (a) to any loss against which the named Insured has other valid and collectible insurance, nor (b) unless the named Insured notifies the Company within ten days following the date of delivery of such other automobile, nor (c) except during the policy period, but if the date of delivery of such other automobile is prior to the effective date of this policy the insurance applies as of the effective date of this policy, nor (d) unless the named Insured pays any additional premium required because of the application of this insurance to such other automobile."

In construing this provision we are mindful of long established principles here and elsewhere to the following effect:

■■ Policies of insurance being carefully prepared by the insurer, when containing provisions reasonably subject to different constructions, one favorable to the insurer and one favorable to the insured, the construction favorable to the insured shall prevail. As sometimes stated the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases.

■ In giving effect to this rule, it is equally important that the contract made by the parties shall prevail, and no new contract be interpolated by construction.

■ Provisions clearly disclosing their real intent are not to be given a strained construction to raise doubts where none reasonably exist. No citation of authority need be made in support of these well settled principles.

This policy does not afford indemnity against liability incurred in the operation of any and every truck in the grocery business. At the time the policy period begins its coverage is limited to the Chevrolet truck alone.

The automatic insurance is limited to a newly acquired truck. If the insured replaced the Chevrolet truck with another owned by him when the policy was issued, the coverage would not extend to its operation. Paraphrasing the first sentence of the automatic insurance provision to meet the facts, it would read: If Mr. Chapman, the owner of the Chevrolet truck herein described, acquires ownership of a Ford truck, the protection afforded in the operation of the Chevrolet truck shall apply to his operations of the Ford truck from the date of its delivery to him, subject to the following additional conditions.

Condition (1) admittedly has no application. It is intended to apply when this form of policy is written up to cover all trucks owned by the insured, &c.

Condition (2) is to effect that the insurance shall apply to the Ford truck, if it replaces the Chevrolet truck and may be classified for the commercial use defined in the policy. This clause is primarily

to protect the insurer against an additional risk if the new truck be operated in a more hazardous service. If this were the sole condition, and to be read in entire disregard of the contractual provisions touching ownership, our problems would be simplified.

Condition (3) stipulates that the insurance upon the Chevrolet truck automatically terminates when replaced by the Ford truck at the date of its delivery.

This condition is clear and unambiguous. It means the insurance shall apply to only one truck at a given time; that it does apply to the Ford truck, if at all, from the date of its delivery to the insured. Insurance on the Chevrolet is to terminate on same date. This sheds a clear light on the character of acquired ownership in the Ford necessary to bring it within the policy. There is no suggestion of a temporary shifting of coverage to the Ford, and reshifting to the Chevrolet when repaired and put back into service.

The automatic insurance provision has the effect to write the Ford truck into the policy, and strike the Chevrolet therefrom. Thenceforth, the coverage is of the Ford until the end of the policy period, if other terms of the policy are met.

■ "Acquires ownership," we must conclude, clearly means such ownership as the ordinary man ascribes to his own, the property right which he holds as owner; the right of user, and interest in its protection which goes with a sense of ownership.

Condition (4) (b) of the automatic provision, supra, requiring notice within ten days after delivery of the newly acquired truck, is for the benefit of the insurer. Such notice to be given after the coverage has attached to the newly acquired truck, the stipulation that automatic insurance agreement shall not apply on failure to give such notice is in the nature of a forfeiture, to be construed as other forfeiture clauses in insurance contracts.

We can see nothing in this stipulation favorable to a construction extending the coverage to a truck obtained for temporary use while the truck covered by the policy is undergoing repairs. If, for example, this accident had occurred after the Chevrolet had been repaired and put back in the service covered by the policy, would the insurer be heard to say, this policy has terminated as to this truck, because you acquired and put into temporary service a Ford truck? Again, if the ordinary citizen, while holding and using this Ford truck as here, had been asked whether this was a newly acquired truck, whether he had acquired the ownership of this truck, would he not have answered no; it is owned by the garage people who let me have the use of it while my Chevrolet is being repaired?

Very few authorities are found construing this automatic insurance provision, or others of like import.

In Merchants Mut. Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483, construing such clause, the insured had purchased the new car. It was argued the automatic coverage could not apply until the car named in the policy had been. relegated to an unsalable status and the new car registered and tagged so as to be legally operated on the highway. The accident in which the new car was involved occurred on the same day it was purchased and title acquired. The court held the coverage dated from the delivery of the new car to replace the car named in the policy. We approve such holding.

In Clarno v. Gamble-Robinson Co., 190 Minn. 256, 251 N.W. 268, the clause employed the words "acquired" and "purchased." Held the coverage only applied to cars to which the insured had acquired some title by purchase or otherwise; and specially observed the coverage could not extend to a borrowed car.

In Dean v. Niagara Fire Ins. Co., 24 Cal.App.2d Supp. 762, 68 P.2d 1021, the holding was the same as in the Lambert case, supra. The court further held the coverage did not apply to a new car held and driven to try it out with a view to its possible purchase.

■ Our conclusion is the automatic insurance provision does not apply to the Ford truck under the facts of this case.

The decree should have granted the relief sought by complainant. The decree is reversed and cause remanded for proceedings in accordance with this opinion.

Reversed and remanded.

GARDNER, C. J., and KNIGHT and LIVINGSTON, JJ., concur.