## Kump v. State Automobile Ins. Assn.

*Donald G. Oyler*, for plaintiff.

*S. M. Raffensperger*, for garnishee.

SHEELY, P. J., July 31, 1964.—This is a motion by the use plaintiff for judgment on the pleadings against a garnishee. The question involved is the proper construction of a Broad Form Family Automobile Policy issued by the garnishee.

In passing upon a motion for judgment on the pleadings we must accept as true all facts alleged in the pleading under attack. Suit was brought by Floyd J. Kump against Tom Kump and Howard C. Weikert for damages resulting from injuries to his daughter incurred in an automobile accident. Faye Little, administratrix of the estate of Phillip L. Little, deceased, was joined as an additional defendant. Judgment was recovered in favor of the plaintiff and against all defendants. The judgment was paid by, and marked to the use of, Tom Kump who then commenced attachment execution proceedings to collect one-half of the amount of the judgment from State Automobile Insurance Association, garnishee, which had issued a Broad Form Family Automobile Policy to Donald W. Little, the father of Phillip L. Little.

At the time of the accident which gave rise to these proceedings Howard C. Weikert was operating, and Phillip L. Little was a passenger in, a 1957 Plymouth Coupe registered and titled in the name of Donald W. Little. From the answers of the garnishee to the interrogatories filed by the use plaintiff, it appears that in

December, 1960, Phillip L. Little purchased a 1957 Plymouth, but since he was just 18 years of age, and it was necessary to borrow money to purchase the automobile, the certificate of title was taken in the name of Donald W. Little and registration plates were issued in his name. He also executed a note to a finance company in connection with the purchase and payments on the note were made by Phillip L. Little to Donald W. Little who delivered them to the finance company. During the greater portion of the period from December, 1960, until May, 1961, when the accident occurred, the automobile was stored in the garage at the rear of the home of Donald W. Little, which was also the home of Phillip L. Little, but several days prior to the accident the automobile was taken to a filling station where Phillip L. Little was employed. Some of the time between December 30, 1960, and April 30, 1961, Donald W. Little had the keys to the automobile in his possession or control and some of the time Phillip L. Little had the keys in his possession or control.

By the terms of the Broad Form Family Automobile Policy issued by the garnishee to Donald W. Little, the company agreed to pay on behalf of the "Assured" therein all sums which the assured should become legally obligated to pay as damages because of bodily injury sustained by any person arising out of the use of the "owned automobile." The policy defined "Assured" to include, with respect to the "owned automobile," not only the named assured but also any resident of the same household as the named assured. It defined "owned automobile" as not only the car described in the policy declaration, but also as a private passenger automobile "acquired by the named assured during the policy period." The policy period extended from October 10, 1960, to October 10, 1961, and therefore was in effect when the 1957 Plymouth was acquired, and at the time of the accident.

Phillip L. Little was a resident of the same household as his father, Donald W. Little, and would come within the definition of "Assured" under the terms of the policy. The question presented is whether the 1957 Plymouth was "acquired" by Donald W. Little. If so, the garnishee would be liable; if not, there would be no liability. If Donald W. Little acquired ownership of the automobile, even though intended for the use of his son, the garnishee would be liable.

We have no difficulty, under the answer to the interrogatories, in concluding that Donald W. Little did not acquire legal ownership of the Plymouth automobile involved in this case. The automobile was purchased by Phillip and, as between him and his father, belonged to him. Phillip made the payments on the note and when the note was paid in full there can be no doubt that he could compel his father to transfer the title to him. The father entered the picture only for the purpose of loaning his credit to his son who could not contract a valid legal obligation because of his minority. The father did execute the note to the finance company, whether alone or jointly with his son does not appear, and did have the title to the automobile registered in his name by the Department of Revenue, and registration plates therefor were issued in his name.

Counsel agree that the fact that the certificate of title was issued in the name of Donald W. Little does not establish conclusively that he was the owner of the vehicle. Section 202 of The Vehicle Code, 75 PS §202, provides for the making of an application for a certificate of title for a motor vehicle and provides that if the Secretary of Revenue is satisfied that the applicant is the lawful owner of such motor vehicle "or is otherwise entitled to have the same titled in his name" the department shall issue a certificate of title. In Braham and Company v. Steinard-Hannon Motor Co., 97

Pa. Superior Ct. 19 (1929), Judge Keller pointed out that the primary purpose of the statute was to protect the public against the theft of automobiles and their resale by the thief, and to facilitate the recovery of stolen automobiles, and that the certificate of title is not a warrant of ownership or muniment of title as usually understood in the law, although it may be relevant evidence in establishing such title. See also Weigelt v. Factors Credit Corporation, 174 Pa. Superior Ct. 400 (1953). The issuance of registration plates for the automobile, under section 401 et seq. of The Vehicle Code, follows the issuance of the certificate of title.

Plaintiff contends that the acquisition of the automobile by Donald W. Little was evidenced not only by the title and the registration plates but also by the fact that the financing was in his name, the car was kept in his garage, and he kept the keys in his possession or control. As to the latter statement it is noted that the answers to the interrogatories stated that "some of the time between December 30, 1960, and April 30, 1961, Donald W. Little had the keys to the said 1957 Motor Plymouth Coupe in his possession or control, and some of the time during such period Phillip L. Little had keys to said automobile in his possession or control." The circumstances under which Donald W. Little had the keys in his possession or control are not set forth.

We do not believe that these factors are conclusive of the question before us. Phillip L. Little was a member of the household of Donald W. Little and it would be natural for him to store his privately owned automobile in the family garage and, perhaps, to permit his father to use it. Conversely, it would not be unusual for a father to permit his 18-year old son to use the father's automobile and to have the keys in his possession or control at certain times. The fact of financing

the purchase in the father's name is hereinbefore discussed. Phillip L. Little could not contract a valid legal obligation, but he did make the payments thereon through his father.

The answer to the problem depends upon the meaning of the word "acquired" as used in this policy of insurance, keeping in mind that an insurance policy is to be construed most strongly against the insurer who prepared it: Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 304 (1956); and where a policy is susceptible of two interpretations it must be construed in favor of the insured: Armon v. Aetna Casualty and Surety Company, 369 Pa. 465 (1952).

In Robbins v. City of Rapid City (S. Dak.), 23 N. W. 2d 144, 149 (1946), it was said that: "The word 'acquire' has been variously defined. In its primary use it means to get as an owner, but in its broader sense it means to obtain in any manner. 1 C. J. 908; 1 C. J. S. 918". But, as applied to an automatic insurance clause in a liability policy it has been held that a borrowed automobile is not a "newly acquired automobile" within the meaning of the policy: Daugaard v. Hawkeye Security Insurance Co. 239 F. 2d 351, 354 (1956).

The "automatic insurance" clause in standard automobile liability policies is intended to meet the necessity for maintaining coverage in the situation resulting from the recognized custom among insured owners of acquiring other cars by replacement and new purchases during the life of his policy: 7 Am. Jur. 2d, Automobile Insurance 100. In most of the policies construed in the reported cases the term "ownership of which is acquired" or some similar term is used. In the policy in this case, the definition of "owned automobile" is: "It also means a private passenger or utility automobile acquired by the Named Assured during the policy

period" in addition to the automobile "described in the Declarations." Under item 6 of "Declarations Defined" it is provided: "Titleholder. The Named Insured is the sole owner of the automobile, except with respect to bailment lease, conditional sale, mortgage or other encumbrance, as herein stated. Absence of entry means 'no exceptions.' " In the Policy Declarations there is no entry under Item 6, indicating that the Named Insured, Donald W. Little, was the sole owner of the automobile described in the policy.

Under item 3 of the "Conditions" of the policy it is stated: "If the Named Assured disposes of, acquires ownership of or replaces a private passenger . . . automobile . . . he shall inform the Underwriters not later than 30 days after expiration of the policy. Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the Underwriters."

The fact that the policy refers throughout to the "owned automobile"; that the declaration provides that the named assured is the "sole owner" of the automobile; and that the conditions refer to the named assured acquiring "ownership" of an automobile, clearly indicates that the word "acquired", in the definition of "owned automobile", was used in the primary meaning of the word: to get as an owner.

Plaintiff relies to some extent upon Clarno v. Gamble-Robinson Co., 190 Minn. 256, 251 N. W. 268 (1933), but instead of supporting plaintiff's position that case is authority against him. In that case defendant owned certain trucks and automobiles, including a Chevrolet truck. For certain reasons it temporarily used a Reo truck owned by another, which was also covered by insurance, while the owner of the Reo truck used the Chevrolet truck. While defendant was using the Reo truck there was an accident as a result of which judgment was entered against defendant. Both insur-

ance companies were garnisheed and both were held liable. On appeal the question was whether defendant's insurance policy which covered the Chevrolet also covered the Reo while being used by defendant. An endorsement on the policy provided that: "In addition to the automobiles described in the undermentioned policy, the said policy is hereby extended also to cover all automobiles acquired by the Assured during the policy period . . . . The Assured agrees to furnish to the Company's Agent, within thirty days after the purchase of such automobiles, the date purchased and a description of the automobiles, for the purpose of endorsing such automobiles on the policy at a pro rata premium."

The court held that if there were any doubt as to the meaning of the word "acquired" it was clarified by the provision requiring notice to the company of the "purchase of such automobiles," and that the endorsement had reference to only one class of automobiles, and that is those purchased. Plaintiff states that there is no such requirement in the policy here in question. But this overlooks the notice requirement of item 3 of the "Conditions," supra, which requires notice to the underwriter if the named assured disposes of, or acquires ownership of or replaces an automobile. That case, therefore, is authority for the proposition that the word "acquired" means "acquired ownership of."

The only case we have found which is near to the present case on its facts is Quaderer v. Integrity Mutual Insurance Co., 263 Minn. 383, 116 N. W. 2d 605 (1962). In that case defendant insurance company renewed two policies insuring plaintiff against liability for damages incident to the ownership and use of two automobiles described in the policy, one a Nash and the other an Oldsmobile. The policy covering the Oldsmobile was denoted a "Family Automobile Policy." Plaintiff was the registered owner of the Oldsmobile,

but at the time the policy was issued the agent was advised that plaintiff's son, then under 21 and living in plaintiff's household, was the principal user. The Nash was described by plaintiff as his "own car." Since the son, Richard, was the principal user of the Oldsmobile, the premium for liability coverage on that car was considerably larger than the premium on the policy covering the Nash. While the policy covering the Oldsmobile was in force, Richard was involved in an accident resulting in a personal injury suit being brought against the plaintiff and Richard. Defendant refused to undertake the defense of the action and, after plaintiff successfully defended it, plaintiff sued defendant for his expenses.

At the time of the accident Richard was driving a Hudson automobile which had been purchased by Richard and his father about a week before the accident with the intention of replacing the Oldsmobile because Richard and his father decided the finance payments Richard was making on the Oldsmobile were too oppressive. Registered title to the Hudson, like that of the Oldsmobile, was placed in the father who advanced the purchase price of $135 for the Hudson upon Richard's promise of repayment.

Defendant refused to reimburse plaintiff for expenses on the ground that the Hudson was not the Oldsmobile described in the policy and that the Hudson was owned by Richard and not by the plaintiff, and was therefore not an "owned automobile" as defined in the policy. Included in the definition of "owned automobile" under the policy was "a private passenger . . . automobile . . . ownership . . . of which is acquired by the named insured during the policy period . . . ."

The trial court found, upon the issue of ownership, that Richard, and not the plaintiff, was the owner of the Hudson. On this issue, which is the principal issue in the present case, the appellate court said, page 608:

"There is sufficient evidence to support the court's findings and decision that the Hudson at the time of the accident was in fact owned by Richard, not plaintiff."

The court went further, however, and held that the definition of "owned automobile" included the Hudson as a newly acquired additional automobile. It reached that conclusion by stating that public policy favored the insurance of all automobiles and that in their context the terms "ownership" and "owned" are ambiguous in that it is not clear whether they mean registered owner, or one having legal title to the vehicle, or simply one who may be exposed to liability as a registered owner pursuant to the statutes governing motor vehicle registration and the Safety Responsibility Act of Minnesota. It held that these words as used in the policy were intended to include any interest in an automobile which might expose one to liability by reason of the use of that automobile by the insured or members of his household, and that it was clear "that in the suit for damages plaintiff could have been held liable for any negligent operation of the Hudson by his son under the vicarious liability provisions of the Safety Responsibility Act." On the basis of this reasoning the court held that the terms "ownership" and "owned by the named insured" under the provisions of the family automobile policy included any insurable interest in the automobile described in the policy, and that an insurable interest exists when the named insured may be held liable for damages incident to the operation and use of such automobile. Therefore, it concluded that the phrase "owned automobile" included not only the Oldsmobile described in the policy but also the Hudson in which the insured acquired an insurable interest.

We cannot accept this reasoning. There is a vast difference between ownership and merely having an

insurable interest. A judgment creditor has an insurable interest in the property of his debtor but he is not the owner of the property and cannot insure it as owner. While insurance policies are to be construed in favor of the insured where a policy is susceptible of two interpretations, we fail to see how the word "ownership" is susceptible of two interpretations. Provisions of an insurance contract clearly disclosing their real intent are not to be given a strained constrution to raise doubts where none reasonably exist: Aetna Casualty & Surety Company v. Chapman, 240 Ala. 599, 200 So. 425 (1941).

In any event, there is no statute in Pennsylvania similar to the Safety Responsibility Act of Minnesota which imposes a vicarious liability upon the owner of a vehicle for any injury or damage resulting from the operation of his vehicle with his express or implied consent, the operator being deemed his agent: Minn. Statutes (1961) sec. 170.54. In Pennsylvania agency would have to be proved in order to make the owner liable.

The only interest of Donald W. Little in the vehicle owned by Phillip L. Little was to hold the title to the vehicle until Phillip had completed his payments to the finance company. While this may have given him an insurable interest so far as fire, theft, or collision insurance was concerned, it would not give him an insurable interest as to liability insurance, at least, as owner.

In Robinson vs. Georgia Casualty and Surety Co. 235 S. C. 178, 110 S. E. 2d 255 (1959), Napoleon Truesdale owned a 1956 Chevrolet which was covered by liability insurance of the St. Paul Mercury Insurance Company. His son, Eugene Truesdale's driver's license had been suspended and to have it restored he was required to produce evidence of financial responsibility. For this purpose he secured a liability insur-

ance policy from Georgia Casualty and Surety Company covering the same 1956 Chevrolet owned by his father, the policy being an owner's policy. Thereafter, Napoleon Truesdale traded the 1956 Chevrolet for a 1958 Chevrolet which was likewise registered in his name. Eugene Truesdale operated the 1958 Chevrolet and requested Robinson to do an errand for him, using the automobile. Robinson was involved in an accident. Georgia Casualty refused to undertake defense of the action on the ground that its policy did not cover the 1958 Chevrolet. Its policy contained a provision for automatic insurance covering "an automobile ownership of which is acquired by the named insured." The court held that Eugene Truesdale did not acquire ownership of the 1958 Chevrolet and, therefore, by the clear language of the policy, there was no coverage as to Robinson while driving that automobile on behalf of Eugene Truesdale.

In Aetna Casualty and Surety Company vs. Chapman, 240 Ala. 599, 200 So. 425, 427 (1941), where the insured was given the temporary use of a truck by a repairman while his own truck was being repaired, it was held that the insured did not "acquire ownership" of the second truck within the meaning of the automatic insurance provision, the court stating that these words clearly mean "such ownership as the ordinary man ascribes to his own, the property right which he holds as owner; the right of user, and interest in its protection which goes with a sense of ownership." Donald W. Little had none of these attributes of ownership.

Plaintiff finally points out that Phillip Little probably could not have insured the Plymouth Coupe even if he had wanted to do so, apparently because of his age. If this be true, it would be a gross fraud upon the insurance company to place the title to Phillip's automobile in the name of his father so as to bring it within the automatic insurance provisions of a policy held by

father on another automobile, thereby effectively giving Phillip liability coverage on the automobile as a member of his father's household.

On the basis of the foregoing authorities we conclude that the word "acquired" as used in the insurance policy under consideration means "acquired ownership of" and that since Donald W. Little did not acquire ownership of the Plymouth Coupe involved in this accident, defendant insurance company would not be liable under its policy issued to Donald W. Little.

And now, July 31, 1964, plaintiff's motion for judgment against the State Automobile Association on its answer to the interrogatories filed in the present proceeding is denied. An exception to this order is noted on behalf of plaintiff.