203 So.2d 268

**AETNA CASUALTY & SURETY COMPANY et al.**

v.

**W. B. MITCHELL, Sr., et al.**

**7 Div. 717.**

Supreme Court of Alabama.

Oct. 5, 1967.

Lange, Simpson, Robinson & Somerville, Reid B. Barnes and Wm. G. Somerville, Jr., Birmingham, and Jos. Kellett, Fort Payne, for appellants.

Mead, Norman & Fitzpatrick, Birmingham, for appellee Home Indemnity Co.

### PER CURIAM.

Appellant seeks here to review and reverse a declaratory final decree rendered by the circuit court of DeKalb County. We deem it unnecessary to describe or list the pleadings and the procedure employed to present the declaratory issues, but it is sufficient to say that the central theme of the proceedings was to obtain a judicial determination as to whether appellant, which we will hereafter refer to as Aetna, or respondent and cross-complainant, Home Indemnity Company, which we will refer to as Home, was the insurer of complainants W. B. Mitchell, Sr., et al., against liability for bodily injury or death of a person, or whether both, Aetna and Home, were the insurers against such damages.

It appears that W. B. Mitchell, Sr., operated a business of which he was the sole owner, and that his driver, while acting within the line and scope of his authority, propelled a Chevrolet truck, hereafter more accurately described, against another motor vehicle whereby from the impact one person riding in the latter vehicle was killed and several others were injured, some more seriously than the others.

Home, under the impression that it was the insurer, began defense of the suits which were filed to recover damages for the death and injuries that resulted from the collision, but after ascertainment of

certain facts, of which it was not informed, later proposed to withdraw from such defense. However, it continued to defend until later when it did withdraw and Aetna took over. We do not think such tentative defense by Home amounted, under the circumstances, to an admission of liability; at least, there is no contention to that effect.

Therefore, the real contest or fight during the declaratory trial and on this appeal is between Aetna and Home as to which is the insurer, with the insured Mitchell insisting at the trial, and here, that Aetna was the insurer and not Home. Aetna seeks to escape from any and all liability under its policy, or if not, it contends that both it and Home were jointly liable on a pro rata basis pursuant to the terms of their policies.

Much of the essential evidence is not in dispute. The disputed areas of evidence are minuscule and have little bearing, if any, upon the decisional issues arising from the evidence and pleadings.

We think it fair to say that appellee, W. B. Mitchell, Sr., was the sole owner and operator of a business in DeKalb County, and that in such operation he used a 1½ ton red Ford short truck; that Aetna insured a 1955 Chevrolet truck with a liability policy (No. 11CA 56711) with limits of 100,000/300,000/25/000 dollars. This policy covered from September 11, 1959 to September 11, 1960. This policy was renewed on September 11, 1960 and covered to September 11, 1961, but described the Ford truck aforementioned. This policy on the same Ford truck was renewed by Aetna (same type policy) and covered from September 9, 1961 to September 11, 1962. This policy was misplaced and not in evidence, but its issuance is not in dispute. This misplaced policy Aetna again renewed on September 11, 1962 with expiration on September 11, 1963. The number of the latter policy is 76CA4150. The contention is that this policy was in full force and effect at the time of the collision that occurred on October 15, 1962.

The confusion with respect to liability arises out of the fact that in July, 1962, while the misplaced policy was in effect, W. B. Mitchell, Sr., the insured under the Aetna policies above mentioned, swapped the Ford truck, described in the Aetna policies, to his son, Harold, for the latter's 1960 Chevrolet truck, both trucks being 1960 1½ ton "short trucks." The trial court construed the transaction between the father and son (they were not in business together) to have been an exchange of trucks. The trucks bore different trade names, but were essentially the same type and tonnage.

The policy of Aetna (No. 76CA4150), without dispute, contained the same provisions that appeared in the prior policies and insured the same truck.

The same agent, B. S. Durham Agency, represented Aetna and Home as General Agent, and had authority, as it did, to issue all the policies which were the subject of evidence in this suit. This same agency had issued to Harold Mitchell (son of W. B. Mitchell, Sr.) a liability policy insuring Harold's Chevrolet truck with limits of 25,000/50,000/10,000 dollars. The insurer of Harold's policy was Home. The number of this policy is 5 33 44 19.

After the aforementioned exchange of trucks, Harold Mitchell, so Aetna contends, notified Durham, the General Agent, about the exchange or substitution of trucks. Durham contends that upon such notice, he issued an endorsement for the Home policy that described the Chevrolet. The endorsement changed the insured from Harold Mitchell to appellee W. B. Mitchell, Sr. Durham further testified that he mailed a copy of the endorsement to Home and a copy to W. B. Mitchell, Sr., or the name of Mitchell's business. W. B. Mitchell, Sr., testified that he had never seen the endorsement, and did not know anything about it, and never authorized the issuance of such endorsement to him. In fact, he testified that he was depending on Durham to keep him insured with

liability insurance with limits of the Aetna policy. Home does not, in fact, contend that W. B. Mitchell, Sr., authorized the endorsement, as we view the evidence, but does insist that W. B. Mitchell, Sr., received the endorsement and ratified the issuance of the same. Another son of W. B. Mitchell, Sr., testified he was in charge of his father's office, but that so far as he knew, he had never seen the endorsement, and if it came to the office, it might have been unintentionally thrown in the waste paper basket.

There is considerable evidence addressed to conversations between appellees Mitchell and Durham that took place after the collision. We can't say that these conversations are material or shed any light on the central issue as to whether Aetna or Home or both were the carriers of the insurance on the Chevrolet at the time of the collision.

■■ We have given considerable study to the excellent briefs filed by the parties to this appeal. We are not convinced that the trial court was in error in its findings that W. B. Mitchell, Sr., never became a party to the Home policy, and therefore "there can be no liability under this contract, and that the contract is void." The decree correctly fastened Aetna with the duty to defend the suits and to pay all the damages to the complaining parties within the limits of the Aetna policy.

Paragraph IV of the Aetna policies is as follows so far as the same is pertinent to this suit:

"IV. * * *

"(4) Newly Acquired Automobile— an automobile, ownership of which is acquired by the named Insured or his spouse if a resident of the same household, if (a) it replaces an automobile owned by either and covered by this policy, or the Company insures all automobiles owned by the named Insured and such spouse on the date of its delivery, and (b) the named Insured or such spouse notifies the Company within thirty days

following such delivery date; but such notice is not required under Coverages A, division 1 of A–1 and B if the newly acquired automobile replaces an owned automobile covered by this policy. The insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured or such spouse has other valid and collectible insurance. * * * "

We are convinced from the evidence, as was the trial court, that the Chevrolet truck which W. B. Mitchell, Sr., acquired from his son, Harold, in exchange for the Ford truck that was described in the Aetna policy was merely a replacement of the Ford truck. The Chevrolet truck, as such replacement, was automatically insured under the terms of the Aetna policy and no notice to Aetna was necessary to effect the coverage.

The Aetna policy in force when the collision occurred on October 15, 1962, was a renewal of the prior (misplaced) policy.

"The rights of the parties on renewal of existing insurance are to be determined by the terms and conditions of the original policy, which are continued in force, except as altered in the contract of renewal; and it will be presumed that an agreement to renew contemplated a renewal on such original terms." 26 Corpus Juris, 109, p. 110.

Quoting with approval the above, this court in the case of National Union Fire Insurance Co. v. Morgan, 231 Ala. 640, 648, 166 So. 24(14), observed:

"In the absence of an agreement to the contrary, the terms of the contract of insurance are neither enlarged, restricted, or changed by the renewal, but the rights of both parties, no matter how often a policy of insurance may have been renewed, are still controlled by the provisions of the policy as originally issued. (Cases cited). *. * * "

All of the Aetna policies on the Ford contained the aforequoted provision.

We quote from the opinion of the trial court expressed in its final decree.

"Paragraph Four of the Aetna policy deals with coverage afforded for a newly acquired automobile. Without discussing in detail that paragraph and the exceptions therein, the Court has reached the conclusion that the red Chevrolet truck was automatically substituted for the Ford truck in the original Aetna policy and that its renewal on September 11, 1962 covered the Chevrolet truck, although the Ford truck was still named in the policy. Much authority has been cited to the Court along this line, and the Court has reached this decision after a careful study of the cases cited. One case which sets out the principle involved is National Union Fire Insurance Co. v. Morgan, 231 Ala. 604, 166 So. 24. It seems to the Court that the purpose of the automatic coverage clause in this policy is made to protect the insured in just such a situation as this and it further appears that this protection is extended without the necessity of notice to the insurer. This expressly appears under the terms of Paragraph Four. * * *"

See: Aetna Casualty & Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425(5).

The trial court further observed:

"* * * After carefully considering the testimony with regard to this transaction, the Court has reached the conclusion that W. B. Mitchell, Sr., never knew of this endorsement (making W. B. Mitchell, Sr., the insured in the Home policy) and that he was not aware of this Home policy until after October 15th, the date of the automobile accident. * * * In the opinion of the Court, the simple fact is that W. B. Mitchell, Sr., never became a party to the insurance contract and, therefore, there can be no liability under this contract (Home policy), and the contract is void."

We conclude that the opinion and decree of the trial court is sound, is based on the law and the facts, and should be affirmed. We so hold and affirm the decree.

The foregoing opinion was prepared by B. W. SIMMONS, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.