Federated Mutual Insurance Company appeals from a judgement of the Choctaw Circuit Court in favor of Abston Petroleum, Inc., Eddie Abston, Victor Schill, and Cynthia Schill. We reverse and remand.
 I. Factual Background and Procedural History
Victor Schill and Cynthia Schill owned a hardware and grocery store in Silas. The Schills sold gasoline from pumps located in front of the store pursuant to a consignment agreement with Abston Petroleum. Abston Petroleum owned the pumps, the tanks in which the gasoline was stored, and the underground lines connecting the tanks and the pumps, all of which were located on the Schills' property. In 1999, pursuant to applicable state and federal laws, Abston Petroleum removed the existing underground gasoline storage tanks on the Schills' property and replaced them with aboveground storage tanks. After the aboveground tanks were installed, the Schills said that they complained repeatedly to Abston Petroleum about leaks in the underground lines from the aboveground tanks to the pumps. The Schills alleged that in May 2001 customers and adjacent landowners complained about a gasoline smell and a gasoline film in and around the store. On June 11, 2001, the Schills notified the Alabama Department of Environmental Management that a significant and dangerous quantity of gasoline fumes was emanating from the leaks, and, as a result, the state fire marshal closed their business. The store remained closed for six to eight weeks while environmental cleanup efforts were conducted and the necessary repairs were attempted. Abston Petroleum ultimately removed all the gasoline pumps and tanks from the Schills' property, but the Schills were never able to reopen their business.
The Schills sued Abston Petroleum and Eddie Abston, its president (hereinafter collectively referred to as "Abston Petroleum"), alleging that their property was contaminated by gasoline that had leaked from the underground lines owned and maintained by Abston Petroleum, and that the contamination had caused them to suffer personal injury, including a worsening of Cynthia Schill's migraine headaches, and property damage, including the loss of revenue during the period the store was closed and, ultimately, the loss of their business.
At the time of the gasoline contamination, Abston Petroleum was insured under a commercial general-liability insurance policy issued by Federated Mutual. After Abston Petroleum notified Federated Mutual of the Schills' personal injury and property damage and their resulting claims, Federated Mutual informed Abston Petroleum that the pollution-exclusion endorsement to its insurance policy with Federated Mutual excluded coverage for the Schills' claims arising out of the gasoline contamination. *Page 707 
Abston Petroleum filed a third-party complaint against Federated Mutual and Keith Mills, the agent who had sold the Federated Mutual policy to Abston Petroleum and who serviced the account. Abston Petroleum sought a judgment declaring that the policy covered the Schills' claims against it and asserted claims against Federated Mutual alleging breach of contract, bad faith, and negligent or wanton hiring and retention of Mills. Abston Petroleum asserted claims against Mills of fraudulent misrepresentation and suppression, and claims against both defendants of conspiracy to defraud and negligent or wanton procurement of insurance. The trial court severed Abston Petroleum's claims against Federated Mutual and Mills from those of the Schills against it.
In July 2004, the Schills settled their action against Abston Petroleum, entered into a $500,000 consent judgment and nonexecution agreement, and dismissed their complaint. Abston Petroleum assigned its rights to the Federated Mutual insurance policy to the Schills. They, in turn, agreed not to proceed further against Abston Petroleum. The Schills and Abston Petroleum agreed to jointly prosecute Abston Petroleum's claims against Federated Mutual and Mills. The Schills then filed a complaint in intervention in Abston Petroleum's third-party action against Federated Mutual and Mills. They later filed a motion requesting permission to intervene; the trial court granted that motion.
Abston Petroleum and the Schills moved for a summary judgment as to two counts of the third-party complaint: Count I, seeking a judgment declaring that the Federated Mutual policy provided coverage to Abston Petroleum for the Schills' claims and damages, and Count II, alleging that Federated Mutual had breached the insurance contract. Abston Petroleum and the Schills also moved for a judgment declaring that Federated Mutual was bound by their consent judgment. The trial court did not rule on that motion. After discovery was completed, Federated Mutual and Mills filed a cross-motion for a summary judgment in their favor as to all claims in the third-party complaint. The trial court entered a summary judgment in favor of Abston Petroleum and the Schills as to Counts I and II of the complaint, holding that Federated Mutual was obligated as a matter of law to provide coverage for the Schills' damage. The court also entered a summary judgment in favor of Federated Mutual and Mills as to Count III, alleging bad faith against Federated Mutual, and Count VI, alleging that Federated Mutual and Mills had conspired to defraud Abston Petroleum and the Schills. The court denied all motions as to the other claims in the complaint, including the fraud claims against Mills, the claims of negligent or wanton failure to procure insurance against both defendants, and the claims of negligent or wanton hiring and retention against Federated Mutual. The court made the summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P. Federated Mutual appeals the trial court's summary judgment in favor of Abston Petroleum and the Schills on Count I, seeking a judgment declaring that the Federated Mutual policy provided coverage to Abston Petroleum for the Schills' personal injury and property damage and their resulting claims, and on Count II, alleging that Federated Mutual had breached the insurance contract.
 II. Standard of Review
"The standard by which this Court will review a motion for summary judgment is well established:
 "`The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that *Page 708 
the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); § 12-21-12(d)[,] Ala. Code 1975. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871
(Ala. 1989).
 "`In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).'"
Payton v. Monsanto Co., 801 So.2d 829, 832-33
(Ala. 2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co.,742 So.2d 182, 184 (Ala. 1999)).
 III. Analysis
Federated Mutual contends that the pollution-exclusion clause in the insurance policy issued to Abston Petroleum is unambiguous and, therefore, that Federated Mutual is not obligated to indemnify Abston Petroleum for the contamination that occurred on the Schills' property. Abston Petroleum and the Schills argue that the pollution-exclusion clause is ambiguous and, therefore, that Federated Mutual should be responsible for the damage sustained by the Schills.
 A. History of the Pollution-Exclusion Clause
The pollution-exclusion clause in the Federated Mutual policy is customarily referred to as an "absolute pollution-exclusion clause." For a thorough discussion of the history of the pollution-exclusion clause and the differences between a qualified pollution-exclusion clause and an absolute pollution-exclusion clause, see Porterfield v. AudubonIndemnity Co., 856 So.2d 789 (Ala. 2002).
Examining the absolute pollution-exclusion clause at issue inPorterfield, a clause comparable to the clause in this proceeding, this Court stated that the applicability of the clause depended upon the "affirmative confluence" of three elements:
 "[T]he bodily injury or property damage in question must have been caused by exposure to a `pollutant'; that exposure must have arisen out of the actual, alleged, or threatened discharge, dispersal, release, or escape of the pollutant; and that discharge, dispersal, release, or escape must have occurred at or from certain locations or have constituted `waste.' In other words, the exclusion comes into play only with respect to bodily injury or property damage arising out of the discharge, dispersal, release, or escape (terms not defined in the policy) of pollutants (a term defined in the policy) at or from certain categories of locations, or which have been transported, stored, handled, treated, disposed of, or processed `as waste.'"
Porterfield, 856 So.2d at 801. We noted inPorterfield that the absolute pollution-exclusion clause has generated much litigation, much of it involving disputes over whether a particular substance qualified as a pollutant.[1] *Page 709 
Subsections (1)(f) and (2)(f) of the coverage section in the Federated Mutual policy exclude the following from coverage:
 "(1) `Bodily injury' or `property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of `pollutants':[2]
 ". . . .
 "(f) At or from any tank, piping, pumps or dispensers at premises, sites or locations in addition to those described in subparagraphs (a), (b), (d) or (e), which are or were at any time owned, leased, installed, removed, tested, repaired or filled by or on behalf of any insured, wherever located (except at residences primarily used for dwelling purposes) which contain, transport or dispense or are designed to contain, transport or dispense:
 "(i) motor fuels;
 ". . . .
 "(2) Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of `pollutants' or any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of `pollutants'; if the loss[,] cost or expense arises out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of `pollutants':
 ". . . .
 "(f) At or from any tank, piping, pumps or dispensers at premises, sites or locations in addition to those described in subparagraphs (a), (b), (d) or (e) which are or were at any time owned, leased, installed, removed, tested, repaired or filled by or on behalf of any insured, wherever located (except at residences primarily used for dwelling purposes) which contain, transport or dispense or are designed to contain, transport or dispense:
 "(i) motor fuels;
 ". . . .
 "Motor fuels means petroleum or a petroleum-based substance that is typically used in the operation of a motor or engine, including but not limited to gasoline, aviation fuel, number one or two diesel fuel, or any grade of gasohol."
 B. Whether the Pollution-Exclusion Clause Is Ambiguous
This Court has recognized that "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." State Farm Fire Cas. Co. v. Slade,747 So.2d 293, 308 (Ala. 1999). "`If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court. . . .'"Slade, 747 So.2d at 308 (quoting McDonald *Page 710 v. U.S. Die Casting Dev. Co., 585 So.2d 853, 855
(Ala. 1991)). Because the question of ambiguity is one of law, we must first decide whether the pollution-exclusion clause in the Federated Mutual policy is ambiguous or unambiguous. If the clause is unambiguous, then this Court must enforce the terms of the insurance policy as written. Safeway Ins. Co. ofAlabama, Inc. v. Herrera, 912 So.2d 1140 (Ala. 2005).
Abston Petroleum and the Schills argue that the pollution-exclusion clause is ambiguous because, they argue, the clause does not specifically define "gasoline" as a "pollutant" and because Eddie Abston did not expect that gasoline would be considered an excluded pollutant under the policy. Eddie Abston testified in an affidavit that, in his eyes, gasoline is not a pollutant and that "gasoline should be considered in its normal circumstance, not in the unusual/accidental circumstance." He insists that gasoline is neither an irritant nor a contaminant, and, therefore, Abston Petroleum and the Schills argue, gasoline does not come within the definition of pollutant as stated in the policy.
Abston Petroleum and the Schills rely heavily on Molton,Allen Williams, Inc. v. St. Paul Fire MarineInsurance Co., 347 So.2d 95 (Ala. 1977), in which this Court held that whether a clause in an insurance policy is ambiguous is to be determined by deciding what a reasonable, ordinary person applying for insurance would expect the policy to mean, and they argue that the scope of the pollution-exclusion clause should not be defined by resorting to technical definitions of terms in the clause that differ from what a reasonable, ordinary person would have understood those terms to mean. Although the pollution-exclusion clause inMolton, Allen Williams was a qualified pollution-exclusion clause rather than an absolute pollution-exclusion clause, Abston Petroleum and the Schills argue that that distinction was not dispositive to this Court's holding that the pollution-exclusion clause in Molton,Allen Williams was ambiguous because the insured could have reasonably expected from reading the clause that its construction activity would be covered. Abston Petroleum and the Schills also rely upon Molton, Allen Williams to support their argument that Eddie Abston reasonably expected that the personal injury and property damage allegedly suffered by the Schills as a result of gasoline leaks would be covered by the liability policy he purchased to cover his gasoline-distribution business. Abston Petroleum and the Schills state in their brief that Eddie Abston "purchased a `PETRO PAC policy [from Federated Mutual] for $30,500 expecting that third party negligence or accident claims involving his gasoline business would be covered."
We first address whether the absolute pollution-exclusion clause in the Federated Mutual policy is ambiguous. That determination requires us to consider whether gasoline can be considered a "pollutant" as that term is defined by the policy. Although whether such a clause excludes coverage for damages arising out of gasoline contamination is a question of first impression for this Court, a number of other courts have analyzed similar pollution-exclusion clauses and determined that those clauses exclude damages for claims similar to those of the Schills, i.e., personal injury and property damage caused by gasoline that has leaked from storage tanks or pipes. In so doing, these courts have necessarily concluded that gasoline is a pollutant as defined by the policy under consideration.
As previously noted, under the terms of the pollution-exclusion clause at issue here, the policy does not cover injury or damage
 "arising out of the actual, alleged or threatened discharge, dispersal, seepage, *Page 711 
migration, release or escape of `pollutants' . . .
 ". . . .
 ". . . [a]t or from any tank, piping, pumps or dispensers at premises, sites or locations . . . which are or were at any time owned, leased, installed, removed, tested, repaired or filled by or on behalf of any insured . . . which contain, transport or dispense . . . motor fuels."
(Emphasis added.) Compressing the operative language quoted above, we read the clause to exclude damage arising out of the discharge from any tank or piping owned or installed by any insured, which transports motor fuels. A pollutant is "any solid, liquid, gaseous or thermal irritant orcontaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (Emphasis added.) In the amicus curiae brief filed by the Complex Insurance Claims Litigation Association ("the Association") in support of Federated Mutual, the Association explains why gasoline should be included within the definition of a pollutant in the policy:
 "Gasoline leaking from piping connecting an above ground storage tank and gasoline pumps is plainly a liquid `irritant' or `contaminant' excluded by the term `pollutants.' The focus of the inquiry under the absolute pollution exclusion is not on the nature of the substance alone, but on the substance in relation to the property damage or bodily injury. Even if a substance such as gasoline is commercially useful in one context, it may become a pollutant when it is released and becomes a `foreign' substance in another medium."
The Association and Federated Mutual support their argument in favor of this well-reasoned approach by citing for this Court's review cases from other jurisdictions that have held that an absolute pollution-exclusion clause precludes coverage for gasoline and other petroleum products when those products are acting as pollutants. See United States v. Standard OilCo., 384 U.S. 224, 226, 86 S.Ct. 1427, 16 L.Ed.2d 492
(1966) (rejecting Standard Oil's argument that oil was not refuse because it was a commercially valuable and useful product and holding that even a commercially valuable and useful product becomes a pollutant when it contaminates a river); Western World Ins. Co. v. Stack Oil, Inc.,922 F.2d 118 (2d Cir.1990) (absolute pollution-exclusion endorsement barred coverage for losses incurred when fuel oil escaped from holding tank); Owners Ins. Co. v. Farmer,173 F.Supp.2d 1330 (N.D.Ga.2001) (holding that diesel fuel is unambiguously a pollutant under the terms of pollution-exclusion clause of insurance policy); NorthGeorgia Petroleum Co. v. Federated Mut. Ins. Co.,68 F.Supp.2d 1321 (N.D.Ga.1999) (absolute pollution-exclusion clause unambiguously excluded coverage for claims arising out of petroleum leaks from underground storage tanks);Guilford Indus. Inc. v. Liberty Mut. Ins. Co.,688 F.Supp. 792, 794 n. 1 (D.Maine 1988), aff'd,879 F.2d 853 (1st Cir.1989) (table) ("[I]t is common knowledge that oil spills, leaks, or discharges are commonly considered polluting events. Plaintiff's argument that it could not reasonably have expected oil to be considered a pollutant is disingenuous.");Harrison v. R.R. Morrison Son, Inc.,862 So.2d 1065, 1072 (La.Ct.App. 2003) (holding that policy with pollution-exclusion clause identical to the one here precluded coverage for claims for injury and damage caused when gasoline was released from underground storage tank because "gasoline is a liquid contaminant within the plain meaning of pollutant in the insurance policy" and "the plain meaning of the policy should control"); Wagner v. Erie Ins. Co.,2002 Pa.Super. 166, 801 A.2d 1226 (2002) (gasoline that leaked into soil from underground line clearly was a pollutant pursuant *Page 712 
to service station's insurance policy, which excluded coverage for damage resulting from release of pollutants); TruittOil Gas Co. v. Ranger Ins. Co., 231 Ga.App. 89,498 S.E.2d 572 (1998) (gasoline that had leaked from storage container and contaminated surrounding environment was pollutant according to unambiguous definition of "pollutant" in insurance policy; therefore, policy did not need to specifically list gasoline as a pollutant); Millers Mut.Ins. Ass'n of Illinois v. Graham Oil Co.,282 Ill.App.3d 129, 135-36, 218 Ill.Dec. 60, 668 N.E.2d 223, 228 (1996) (interpretation of "gasoline" as the term was used in a pollution-exclusion clause as a liquid that can be an irritant or contaminant and therefore a pollutant "comports not only with the plain, ordinary, and popular meaning of `pollutant,' but also with common sense"); Crescent Oil Co. v. FederatedMut. Ins. Co., 20 Kan.App.2d 428, 437, 888 P.2d 869, 875
(1995) ("The clear language of the pollution exclusion excludes coverage for property damage caused by gasoline leaking from [the policyholder's] underground tanks."); Heyman Assocs.No. 1 v. Insurance Co. of Pa., 231 Conn. 756, 776,653 A.2d 122, 133 (1995) ("the clear and unambiguous language of the absolute pollution exclusions excludes coverage for the plaintiff's spill of fuel oil"); Legarra v. Federated Mut.Ins. Co., 35 Cal.App.4th 1472, 1481, 42 Cal. Rptr.2d 101,106 (1995) ("`[The insured's] contention that petroleum is not a pollutant within this definition [in the pollution-exclusion clause defining pollutant to include "any solid, liquid, gaseous or thermal irritant or contaminant"] is belied both by science and common sense. Petroleum, either as a liquid or a gas, has been found to be an environmental contaminant or irritant both by courts and legislatures.'" (quoting StaefaControl-Sys. Inc. v. St. Paul Fire Marine Ins. Co.,847 F.Supp. 1460, 1471 (N.D.Cal.1994))); United States FireIns. Co. v. Ace Baking Co., 164 Wis.2d 499, 505, 476 N.W.2d 280, 283 (Wis.Ct.App. 1991) ("[I]t is a rare substance indeed that is always a pollutant; the most noxious of materials have their appropriate and nonpolluting uses. Thus, for example, oil will `pollute' water and thus foul an automobile's radiator, but be essential for the engine's lubrication.").
In support of their argument that gasoline is not a pollutant, Abston Petroleum and the Schills also cite cases from other jurisdictions. See Governmental Interins. Exch. v. City ofAngola, 8 F.Supp.2d 1120 (N.D.Ind.1998) (term "pollutants" as used in absolute pollution-exclusion clause was ambiguous as to whether it included kerosene); Hocker Oil Co. v.Barker-Phillips-Jackson, Inc., 997 S.W.2d 510, 518
(Mo.Ct.App. 1999) ("[F]ailure [of the policy] to identify `gasoline' as a pollutant in its pollution exclusion resulted in uncertainty and indistinctness. The policy was, therefore, ambiguous as to whether gasoline was a pollutant for purposes of the exclusion."); American States Ins. Co. v. Kiger,662 N.E.2d 945, 949 (Ind. 1996) ("the term `pollutant' does not obviously include gasoline and, accordingly, is ambiguous").
In response to Abston Petroleum and the Schills' argument that gasoline is not a pollutant under the policy because it is not specifically listed as a pollutant, the Association citesHarnischfeger Corp. v. Harbor Ins. Co., 927 F.2d 974,976 (7th Cir. 1991), in which the United States Court of Appeals for the Seventh Circuit explained why it would be impractical to list thousands of substances in defining "pollutant" in an insurance policy:
 "Drafters cannot anticipate all possible interactions of fact and text, and if they could the attempt to cope with them in advance would leave behind a contract more like a federal procurement manual than like a traditional insurance policy. Insureds would not be made better off in the process. The resulting contract *Page 713 
would be not only incomprehensible but also more expensive."
We conclude that the better-reasoned approach is that applied by the majority of courts that have reviewed a pollution-exclusion clause identical to or markedly similar to the clause in the Federated Mutual policy before us.[3] We hold that gasoline, although not a pollutant when properly used for the purposes for which it is intended, is clearly a pollutant when it leaks into the soil from underground lines or tanks or when fumes from such a leak are so dangerous that a business must be closed, as was the case here. The simple fact that gasoline serves a vital purpose when released from a properly constructed tank into the confines of an internal combustion engine does not permit us to blink reality and overlook the deleterious consequences that occur when gasoline is introduced into the soil or when its fumes escape into the atmosphere. Because we conclude that gasoline is clearly a pollutant as that term is used in the policy, any argument that the pollution-exclusion clause is ambiguous cannot be supported. Because we hold that the clause is unambiguous, we need not consider the arguments made by Abston Petroleum and the Schills that we should consider the drafting and regulatory history of such clauses or that the policy must be construed against the insurer, who drafted it.
 C. Whether an Insured's Reasonable Expectations Can Overcome Unambiguous Language
We now turn to the argument made by Abston Petroleum and the Schills that Eddie Abston reasonably expected that any claims involving his gasoline-distribution business would be covered by the Federated Mutual policy, despite his testimony that he never read the pollution-exclusion clause before Federated Mutual denied coverage for the Schills' claims. This Court limited the doctrine of reasonable expectations as applied to an insurance policy in Slade, supra. We there stated:
 "The rule (or doctrine) of reasonable expectations of the parties is based on Aetna Casualty Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425
(1941). . . .
 ". . . .
 "`In giving effect to [the rule that the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases], it is equally important that the contract made by the parties shall prevail, and no new contract be interpolated by construction.
 "`Provisions clearly disclosing their real intent are not to be given a strained construction to raise doubts where none reasonably exist. No citation of authority need be made in support of these well settled principles.'
 "[Chapman, 240 Ala. at 602, 200 So. at 426-27.]
 "In Lambert v. Liberty Mutual Insurance Co., 331 So.2d 260, 263 (Ala. 1976), a `stacking' case arising in regard to the statutorily mandated offer of uninsured-motorist *Page 714 
coverage, this Court referred to Chapman and then stated:
 "`As Professor Keeton analyzes it, the principle of reasonable expectations insures that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." R. Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971).'
 "(Emphasis in original.) Then the Court observed that its application of the rule of reasonable expectations in the context of stacking uninsured-motorist coverages allowed an insured to enjoy increased coverage because `where an expectation . . . is in conflict with a limiting clause in the policy, the resulting ambiguity must be resolved in favor of the insured due to the nature of insurance contracts.' Id. at 263.
 "However, the Court found that Lambert was not within the zone of persons entitled to have a reasonable expectation of stacked coverages, because he was an employee of the purchaser of the policy. Id.
at 263-65. The Court also held that Lambert was not a person required by statute to be covered under uninsured-motorist provisions and that the plain terms of the policy limited the amount of coverage provided for him; this, the Court held, was a separate basis for affirming the summary judgment for the insurer. Id. Given the Court's finding that Lambert was not within the zone of persons entitled to a reasonable expectation of stacked coverages and its finding of a separate basis for affirming, we must conclude that, to the extent Lambert is inconsistent with Chapman's requirement that, for the rule of reasonable expectations to apply, there be, as a predicate, doubts as to the real intent of the policy, the statements in Lambert are dicta.
 "Moreover, we are not here presented with separate provisions of an insurance policy each of which is unambiguous when read without reference to the other but, when read together, create a conflict giving rise to an ambiguity. Compare West American Ins. Co. v. Biggs, 348 So.2d 258 (Ala.Civ.App. 1977). The State Farm policy at issue here clearly limits its coverage by citing the policyholder to a specific ensuing section of the policy that contains several exclusions from coverage. At least one court has found that such a reference gives the insured reasonable notice of the exclusion. See Kane v. Royal Ins. Co., 768 P.2d 678, 684 (Colo. 1989).
 "Other courts have limited the use of the doctrine of reasonable expectations to situations in which an insurance policy is ambiguous. See, e.g., Rodriguez v. General Ace. Ins. Co., 808 S.W.2d 379, 381 (Mo. 1991); Riffe v. Home Finders Assocs., Inc., 205 W.Va. 216, 517 S.E.2d 313
(1999). Furthermore, expectations that contradict a clear exclusion are not `objectively reasonable.' Wellcome v. Home Ins. Co., 257 Mont. 354, 359, 849 P.2d 190, 194 (1993). Such a limit on the doctrine of reasonable expectations is necessary. Otherwise, this Court would be faced with the strong temptation to substitute its notion of equity for the unambiguous terms of a contract and the doctrine could be used to invalidate every policy exclusion. See Millar v. State Farm Fire Cas. Co., 167 Ariz. 93, 97, 804 P.2d 822, 826-27 (Ct.App. 1990), review denied, 168 Ariz. 144, 811 P.2d 1081
(Ariz. 1991) ('If . . . all that was required to defeat the operation of a policy exclusion under the reasonable expectation doctrine was a provision attempting to qualify or limit the scope of policy coverage, then every policy exclusion *Page 715 
would be invalid as contrary to the insured's reasonable expectation of coverage.').
 "Accordingly, we conclude that the Slades' expectations of coverage do not require us to construe their policy so as to find coverage. Their expectations were limited by the unambiguous terms of their policy and therefore their expectations of coverage could not be `objectively reasonable.' See Wellcome, supra."
Slade, 747 So.2d at 311-12.
We therefore hold that the argument that Eddie Abston reasonably expected that any claims involving his gasoline-distribution business would be covered by the Federated Mutual policy does not provide a basis for finding coverage for the Schills' losses. Eddie Abston's expectations were limited by the unambiguous terms of the pollution-exclusion clause; therefore, his expectations of coverage could not be "objectively reasonable."
 IV. Conclusion
Because the pollution-exclusion clause is unambiguous, the personal injury and property damage suffered by the Schills are not covered by the Federated Mutual policy issued to Abston Petroleum, and the trial court therefore erred in entering a summary judgment in favor of Abston Petroleum and the Schills on Counts I and II of the complaint. We reverse the judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.
[1] We concluded that the substance at issue inPorterfield — lead paint — qualified as a pollutant under the terms of the absolute pollution-exclusion clause in the policy. However, we ruled in favor of the insured because the exclusion was ambiguous in the context of treating the presence of lead-paint flakes, chips, and/or dust in a residential apartment as a discharge, dispersal, release, or escape of a pollutant. 856 So.2d at 805.
[2] The policy elsewhere defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."
[3] The Association informs us in its amicus curiae brief that the vast majority of courts nationwide — over 100 cases from 36 jurisdictions — have upheld and enforced pollution-exclusion clauses like the one at issue here, which bar coverage for harms caused by exposure to a variety of pollutants. See Quadrant Corp. v. American States Ins.Co., 154 Wash.2d 165, 173-74, 110 P.3d 733, 738 (2005) (noting number and citing cases); Deni Assocs. of Florida,Inc. v. State Farm Fire Cas. Ins. Co.,711 So.2d 1135, 1137 n. 2 (Fla. 1998) (same).